FILED ___ ENTERED
___ LOGGED ___ RECEIVED

NOV 2 6 2012

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

## AFFIANT EXPERIENCE

1. I, James Hessler, being duly sworn, depose and state that I am a Special Agent with the Internal Revenue Service ("IRS"), Criminal Investigation ("CI"), and have served in that capacity since September of 1984. My official responsibilities include conducting investigations of possible criminal violations of the Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title, 31, United States Code), the Money Laundering Control Act (Title 18, United States Code) and related offenses. I have successfully completed Criminal Investigator Training and Special Agent Investigative Techniques training at the Federal Law Enforcement Training Center. The training included courses in financial investigative techniques, accounting, tax, criminal investigation techniques, criminal law and search warrants.

2. I have extensive experience in evaluating fraud and criminal potential relating to tax evasion cases. I have conducted dozens of tax related investigations of individuals in various professions, including the medical profession. I have experience investigating individuals conducting business as sole proprietors, partnerships, Limited Liability Partnerships (LLP), Limited Liability Corporations (LLC), and corporations of various types. My experience with sole proprietorships (Schedule C businesses) is that individuals who own closely held small businesses have control over all aspects of income earned and how their income is recorded, or not recorded. They also normally control the business expenses, and are often the person making the payments and recording the expenditures.

3. In my experience, there is more opportunity to conceal income and overstate expenses in tightly controlled sole proprietorships than in partnerships or corporations. The IRS

has identified sole proprietorships and Schedule C tax returns as a major area of fraud, and has publicly made civil enforcement of Schedule C filers a priority during the past decade. My experience has been that sole proprietors under audit or criminal investigation, who do not cooperate and fail to provide relevant income and expense records, such as sales journals and expense journals, or check registers, whether paper or computer generated, have always concealed income, overstated expenses, and/or created fictitious expenses. In my experience, the failure to provide adequate records and documentation of income and expenses is a very strong indicator of concealed income and false expenses.

4. The facts and information contained in this affidavit are based upon my personal knowledge; analysis of the 2008, 2009, and 2010 federal tax returns of JEFFREY ALLEN PAPER ("PAPER"), analysis of documents obtained during an audit of PAPER, from discussions with Revenue Agent Jalal Abul-Huda ("RA Abul-Huda") relating to this audit, and from interviews with some of PAPER's patients. While this affidavit does not contain every piece of evidence discovered to date, it does not omit evidence that would defeat the probable cause established herein.

## TYPE OF CASE AND VIOLATIONS ALLEGED

5. I am conducting an investigation of JEFFREY ALLEN PAPER, who is a dentist. The audit and investigation thus far revealed that from 2008 through 2010, PAPER has evaded his tax liabilities for these years by omitting substantial amounts of unreported income and failing to respond to written and verbal requests for records to reflect his true income. PAPER has also evaded his tax liabilities for these years by submitting to RA Abul-Huda several checks for personal use to falsely attempt to support substantial business expenses claimed on his Schedule C tax returns. PAPER also failed to respond to written and verbal requests for expense

records and did not provide documentation to support most of his business expenses claimed. These acts of tax evasion are a violation of Title 26 U.S.C Section 7201. There is probable cause to believe that within PAPER's place of business located at **9344 Lanham Severn Road, Suite #112, Lanham Seabrook, Maryland 20706 ("9344 Lanham Severn Road")** there will be evidence that the above mentioned violation was committed, as well as instrumentalities used to commit the offense. The source of my information and the grounds for these beliefs are listed below.

## RESULTS OF EXAMINATION AND ACTS OF TAX EVASION

6. RA Abul-Huda initiated an examination ("audit") for tax year 2009 for PAPER. He called PAPER on March 11, 2011, and left a message. PAPER returned the call on April 12, 2011, and an appointment was made. On April 12, 2011, RA Abul-Huda prepared a written request, Form 4564, Information Document Request, and mailed it to PAPER requesting:

   a. All personal and business bank account statements, cancelled checks, deposit slips, debit and credit memos for 12/1/2008 through 1/31/2010.

   b. Forms 1099 for IRA distributions, pensions and annuities.

   c. Documentation for Schedule A Interest Expense and Contributions.

   d. Schedule C: All books, journals, ledgers and workpapers used to prepare [PAPER's] Schedule C, organized by each income and expense item. Records of all business and personal loan activity (Loan Liability Ledger). Records of all savings and other invested funds for the year. Purchase invoices or closing statements covering acquisitions and dispositions of capital items (business and personal). This includes real estate, automobiles, machinery and equipment, etc.

e. Schedule C Depreciation: Purchase invoices, settlement sheets, receipts and any other evidence to verify ownership of the assets. A computation of how the depreciable basis was determined if different from the cost of the assets. Records, log books, etc., showing total business and personal use of depreciable assets.

f. Schedule C All Expenses: Accounting records detailing the expenses deducted. Cancelled checks and receipts to verify the expenses claimed. Invoices for any capital acquisitions during the tax year.

7. PAPER responded through his Power of Attorney, CPA Edward Crum ("Crum"). His response on May 11, 2011 to the written request of April 12, 2011 included providing Cost of Goods Sold ("COGS") receipts for purchases and information relating to COGS. To prove depreciation expenses, Crum obtained from PAPER and provided RA Abul-Huda 7 checks drawn to Lakewood, or Lakewood CC (Country Club), and an eighth check to an illegible payee, during 2009 totaling $22,809.86. Lakewood Country Club is a private country club, including golf course, pool and other facilities, located at 13901 Glen Mill Road, Rockville, Maryland 20850, and is located only a few miles from PAPER's personal residence in Potomac, Maryland. PAPER told Crum that the checks written to Lakewood or Lakewood CC were for the purchase of his dental chairs. PAPER, through Crum, provided incomplete bank statements, and no cancelled checks or deposit tickets. PAPER and Crum did not provide work papers of how gross receipts were calculated as requested. On May 11, 2011, RA Abul-Huda asked Crum about the missing items that were requested, and he requested Crum to obtain these records from PAPER.

8. On May 12, 2011, RA Abul-Huda met with PAPER and Crum at PAPER's dental office at 9344 Lanham Severn Road. RA Abul-Huda asked PAPER some follow up questions and requested him to provide the missing records that were requested. RA Abul-Huda saw a

room at PAPER's dental office that the revenue agent described as an office having a desk with various work papers and receipts on top of the desk. After the office visit, RA Abul-Huda mailed to PAPER and Crum another Form 4564, Information Document Request, requesting documentation for unsubstantiated business expenses and other missing items.

9. On June 8, 2011, mailed items from Crum were received by RA Abul-Huda including Forms 1099, Forms W-3, bank statements, and some cancelled checks for business expenses. These items were accepted as allowable expenses by RA Abul-Huda and are reflected below in his "Schedule C Expense Adjustments" schedule, however, no documentation was provided for most of the expenses claimed for 2009.

10. On June 8, 2011, RA Abul-Huda contacted the Philadelphia Service Center concerning a Form CP2000, a statutory notice of deficiency, issued to PAPER for tax year 2008. RA Abul-Huda found out this was for PAPER omitting income from IRA distributions from his 2008 tax return. RA Abul-Huda and I have analyzed PAPER's 2008 tax return and agree that he reported similar income and expense amounts and items as those reported on his 2009 and 2010 tax returns. RA Abul-Huda and I also believe PAPER may have omitted substantial income and overstated substantial expenses similar to his 2009 and 2010 tax returns. Because a Form CP2000 was already issued to PAPER, RA Abul-Huda did not initiate PAPER's 2008 tax return for audit.

11. After RA Abul-Huda calculated the tax adjustments for PAPER's 2009 tax return, he discussed the adjustments with Crum on June 23, 2011. RA Abul-Huda advised Crum that he was initiating PAPER's 2010 tax return for audit. RA Abul-Huda mailed another Form 4564, Information Document Request, requesting detailed documentation for income and expenses for

2010, and also made a third written request for the missing documentation for the 2009 unsubstantiated business expenses.

12. On July 20, 2011, Crum mailed 2010 bank statements, PAPER's Form W-2, and canceled checks for "Temp Help" (some of these checks were claimed twice under "Temp Help" and "Other Expenses"). PAPER, through Crum, provided checks to support some advertising expenses, office expenses, taxes and licenses, and COGS. PAPER, through Crum, failed to provide any checks or documentation for employee benefits expenses, repairs and maintenance, depreciation, travel meals and entertainment expense, Schedule C interest expense, and six expense items claimed under "Other Expenses". Please see the "Schedule C Expense Adjustments" schedule below detailing RA Abul-Huda's allowances and adjustments for these expenses.

13. On August 25, 2011, Crum met with RA Abul-Huda and discussed the status of the examination. On this date RA Abul-Huda mailed a fourth Form 4564, Information Document Request, to PAPER and Crum for unsubstantiated 2009 and 2010 business expenses and for disputed income items.

14. On September 9, 2011 RA Abul-Huda met with Crum to discuss the examination and retrieve the items requested from the most recent Information Document Request. PAPER, through Crum, provided some 2010 documentation, but stated that he would have the remaining items ready by September 15, 2011. Crum did not provide these remaining items to substantiate business expenses. The documentation that was provided was accepted and the allowances are reflected in RA Abul-Huda's "Schedule C Expense Adjustments" for 2010 shown below.

15. On September 12, 2011, tax return preparer Dot McKinney told RA Abul-Huda that PAPER prepared a summary sheet that he brought to McKinney each year to have his tax

returns prepared, including tax years 2008, 2009 and 2010. McKinney told RA Abul-Huda that these summary sheets contained all of the income and expenses that PAPER disclosed to her. She said that she accepted this information from PAPER, and that information is what she reported on his tax returns. On December 28, 2011, Crum advised RA Abul-Huda that PAPER told him that he provided summary sheets for McKinney to prepare his tax returns, and that these summaries included all of his income and expenses. RA Abul-Huda requested McKinney and Crum to provide him with these summary sheets. McKinney responded that PAPER was present when she prepared his tax returns and she gave him back the summary sheets without making a copy for her files. Crum advised RA Abul-Huda that he was not able to obtain the summary sheets from PAPER.

16. September 23, 2011 was the last occasion on which PAPER or Crum provided documentation to RA Abul-Huda. Crum provided missing bank statements, but no documents to support any unsubstantiated business expenses.

17. RA Abul-Huda attempted to schedule conferences with PAPER and Crum on four occasions from October 7, 2011 through December 19, 2011, but PAPER failed to attend the scheduled phone conference on December 28, 2011.

18.

| | **Schedule C Expense Adjustments** | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **2009** | | | | **2010** | | | |
| | Per Return | Per Exam | Adjustment | % Adjusted | Per Return | Per Exam | Adjustment | % Adjusted |
| Wages | $71,958.00 | $71,958.00 | $ - | 0% | $62,941.00 | $62,941.00 | $ - | 0% |
| Rent | $37,236.00 | $37,236.00 | $ - | 0% | $36,434.00 | $36,434.00 | $ - | 0% |
| Utilities | $10,193.00 | $10,193.00 | $ - | 0% | $11,355.00 | $11,355.00 | $ - | 0% |
| Legal & | $4,139.00 | $4,139.00 | $ - | 0% | $3,804.00 | $3,804.00 | $ - | 0% |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Professional | | | | | | | | |
| Returns & Allowances | $12,894.00 | $12,894.00 | $ - | 0% | $12,410.00 | $12,410.00 | $ - | 0% |
| Taxes & Licenses | $5,734.00 | $ - | $ 5,734.00 | 100.00% | $8,757.00 | $ 2,581.00 | $ 6,176.00 | 70.53% |
| Supplies | $39,279.00 | $ - | $ 39,279.00 | 100.00% | $38,713.00 | $ - | $ 38,713.00 | 100.00% |
| R&M | $6,052.00 | $ - | $ 6,052.00 | 100.00% | $6,970.00 | $ - | $ 6,970.00 | 100.00% |
| Office Exp | $6,915.00 | $ - | $ 6,915.00 | 100.00% | $7,336.00 | $ 612.00 | $ 6,724.00 | 91.66% |
| Interest Exp | $10,358.00 | $ - | $ 10,358.00 | 100.00% | $9,258.00 | $ - | $ 9,258.00 | 100.00% |
| Insurance | $16,564.00 | $ - | $ 16,564.00 | 100.00% | $18,241.00 | $ - | $ 18,241.00 | 100.00% |
| Employee Benefit | $13,800.00 | $ - | $ 13,800.00 | 100.00% | $10,750.00 | $ - | $ 10,750.00 | 100.00% |
| Advertising | $18,171.00 | $ 10,246.00 | $ 7,925.00 | 43.61% | $16,337.00 | $ 3,378.00 | $ 12,959.00 | 79.32% |
| COGS | $59,846.00 | $ 13,853.00 | $ 45,993.00 | 76.85% | $56,020.00 | $20,127.00 | $ 35,893.00 | 64.07% |
| Depreciation | $26,447.00 | $ - | $ 26,447.00 | 100.00% | $2,735.00 | $ - | $ 2,735.00 | 100.00% |
| Other Exp | $37,635.00 | $ 5,211.00 | $ 32,424.00 | 86.15% | $57,575.00 | $ 7,697.00 | $ 49,878.00 | 86.63% |
| M&E | $4,367.00 | $ - | $ 4,367.00 | 100.00% | $3,085.00 | $ - | $ 3,085.00 | 100.00% |
| Travel | $3,427.00 | $ - | $ 3,427.00 | 100.00% | $2,851.00 | $ - | $ 2,851.00 | 100.00% |
| Total | $385,015.00 | $ 165,730.00 | $219,285.00 | | $365,572.00 | $161,339.00 | $204,233.00 | |

| Unreported Income | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2009 | | | | 2010 | | | |
| | Per Return | Per Exam | Adjustments | % Adjusted | Per Return | Per Exam | Adjustments | % Adjusted |
| Sch C Gross Receipts. | $478,857.00 | $618,820.00 | $139,963.00 | 29.23% | $454,078.00 | $574,025.00 | $119,947.00 | 26.42% |
| IRA Distributions | $ - | $ 69,155.00 | $ 69,155.00 | 100.00% | $ - | $ 15,015.00 | $15,015.00 | 100% |
| Total | $478,857.00 | $687,975.00 | $209,118.00 | | $454,078.00 | $589,040.00 | $134,962.00 | |

**EVIDENCE THAT SUPPORTS THE FACT THAT PAPER IS OPERATING OUT OF 9344 LANHAM SEVERN ROAD AND THAT IT CONTAINS EVIDENCE THAT THE ABOVE MENTIONED OFFENSE IS BEING COMMITTED**

19. On May 12, 2011, RA Abul-Huda met with PAPER and Crum at PAPER's dental office at 9344 Lanham Severn Road. RA Abul-Huda saw a room at PAPER's dental office that the revenue agent described as an office having a desk with various work papers and receipts on top of the desk.

20. To determine taxable income deposits made to PAPER's bank account, RA Abul-Huda contacted sources of several deposited checks. Eight persons responded, of which seven were patients who explained that the checks were for dental services. One patient provided RA Abul-Huda with a document, "Patient History Report – Dr. Jeff Paper" dated January 25, 2012. This is a two-page detailed payment history that appears to be computer generated, showing payment dates, description of payment and service, charged amounts, payment amounts, and

running balances due from July 8, 2007 through January 4, 2012, containing 79 entries. Most of the other patients provided what appeared to be computer generated receipts for payments reflecting their current payment and balance due.

21. Three patients of Dr. PAPER stated that PAPER required payment at the time of service, and that they paid PAPER, his receptionist, or his wife at his office located at 9344 Lanham Severn Road. All three patients said PAPER and his employees typed their payment information on a computer in the reception area in their presence, and then provided them with a receipt printed from the computer printer. They stated that the receipts showed their payments and balance due. One patient said that PAPER required payment when services were performed, but he did not refund the payments from her insurance company that were paid to him. One patient stated that PAPER provided her with her "Patient History Report – Dr. Jeff Paper" dated January 25, 2012 (described above).

### LIKELIHOOD THAT RECORDS NEEDED TO DETERMINE CORRECT INCOME AND EXPENSES FOR TAX RETURNS, INCLUDING BUSINESS AND PERSONAL FINANCIAL RECORDS, WIIL BE FOUND AT PAPER'S BUSINESS

22. Based on my training, professional and personal experience with doctors and dentists, expertise with tax evasion investigations, discussions with other law enforcement officers involved in similar investigations, and from evidence developed thus far in this investigation, I know that medical practitioners typically maintain the following records at their offices:

   a. Ledgers of patients' billings, payments, and balance dues with payment histories for several years.

   b. Ledger of business expenses including medical equipment, instruments, materials and supplies.

c. Receipts for medical equipment, instruments, materials and supplies.

d. Automated accounting ledgers and journals prepared using programs, such as Quicken or Quick Books reflecting income and expense categories and items, Accounts Receivable and Accounts Payable, Income Statements, Balance Sheets, reports reflecting details of bank account deposits and cancelled checks, and other financial reports. As stated above, three of Dr. PAPER's patients received automated reports or receipts from a computer in Dr. PAPER's office.

e. Bank account statements, deposit tickets, cancelled checks, and correspondence. RA Abul-Huda obtained 2010 bank statements from a Bank of America account for JEFF PAPER with the address 9344 Lanham Severn Rd., Lanham, MD 20706-2776.

### COMPUTERS AND ELECTRONIC STORAGE

23. As described above and in Attachments A and B, this application seeks permission to search and seize records that might be found at 9344 Lanham Severn Road, Suite #112, Lanham Seabrook, Maryland 20706, in whatever form they are found. I submit that if a computer or electronic medium is found on the premises, there is probable cause to believe those records will be stored in that computer or electronic medium.

24. Based on my knowledge, training, and experience and consultations with Special Agent Brian Schaub, who is a Special Agent with IRS CI and who has extensive training in collecting and analyzing computer evidence, I know that:

a. Computer storage devices such as hard disks can store the equivalent of millions of pages of information. Criminals can mislabel or hide files and directories, encode communications to avoid using key words, attempt to delete files to evade detection,

or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files, or peruse every file briefly to determine whether it falls within the scope of the warrant.

b. The most forensically sound, effective, and complete way to analyze data from the computer is to create an electronic "image" of the computer media. As "imaging" is not always possible or practical, a computer specialist will decide whether to employ this or another method.

c. "Imaging" is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files designed to protect the integrity of the evidence. "Imaging" a computer permits the computer specialist to obtain an exact copy of the computer's stored data. The computer specialist will then analyze data from the "mirror image" copy. "Imaging" is preferable to searching and extracting files from a hard drive because in many cases, search techniques may not yield the evidence described in the warrant. Additionally, computer evidence is vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"). Therefore, a controlled environment is preferential to conduct an accurate and safe analysis. In light of these difficulties, IRS-CI intends to conduct its searches offsite and use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

d.  The computer specialist will try to image computers on site if possible. If the computer investigative specialist successfully images the computers, there will be no need to seize the actual equipment. If imaging proves impractical, or even impossible for technical reasons, I hereby request the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to "image" or analyze the device(s) off-site. Upon completion, the government will return the equipment within a reasonable time.

e.  Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using readily available forensics tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.

f.  Deleted files, or remnants of deleted files, may reside in free space or slack space— that is, in space on the hard drive that is not currently being used by an active file— for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

g.  Files that have been viewed via the Internet are typically automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as

they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

h. Some types of data are hardware dependant and need a piece of hardware, such as an encryption key for a software program to run or data to be accessed. In these cases, it is necessary to seize the required hardware or encryption key to access this data.

i. Cellular telephones, personal digital assistants (PDAs), and smart phones are computer type devices capable of creating, storing, and transmitting electronic data and are believed to contain some of the evidence described in the warrant. Because of the vast number of different devices on the market, and the complexity of analyzing some of the devices, I hereby request the Court's permission to seize these or similar devices and to "image" or analyze the device(s) off-site. Upon completion, the government will return the equipment within a reasonable time.

25. I submit that probable cause exists to believe that evidence of the crimes detailed in this affidavit are located at 9344 Lanham Severn Road, Suite #112, Lanham Seabrook, Maryland 20706, which is further described in Attachment B. I respectfully request that a search warrant be issued for this location. The purpose of the search warrant is to seize evidence, fruits, and instrumentalities as listed on Attachment A, of the crime detailed in this affidavit.

By: *[signature]*
James Hessler, Special Agent
IRS-CI

SUBSCRIBED AND SWORN TO BEFORE ME
THIS  14th  day of November 2012.

*[signature]*
Jillyn K. Schulze
United States Magistrate Judge

**Attachment A**

**ITEMS TO BE SEIZED AT**

**9344 Lanham Severn Road, Suite #112, Lanham Seabrook, MD 20706**

Based upon the facts contained in this affidavit, your affiant submits that there is probable cause to seize the following items related to the financial affairs of Jeffery Paper, and businesses related to Jeffery Paper, for the period of January 1, 2008 to the present, such records being fruits, instrumentalities, and evidence of violations of Title 26 United States Code § 7201.

1. All records and financial documents relating to tax liabilities, income earned, adjustments to income, deductions, charitable contributions, employee business expenses, mileage logs, business income/receipts, business expenses, credits, assets, liabilities, tax payments, and tax refunds.

2. Federal and state income tax returns, schedules, forms and instructions.

3. Documents and worksheets used to prepare tax returns, including but not limited to Forms W-2, 1098, and 1099; summary sheets, prepared books and records, invoices, canceled checks, bank and investment account statements, deposit slips, check stubs; payroll records, inventory records, records of capital assets, depreciation, and depletion; cash disbursement and receipt journals, general ledgers, subsidiary ledgers, trial balances, and financial statements; prepared income tax worksheets, schedules, and/or tax data questionnaires.

4. All statements, journals, ledgers, records and other financial documents relating to patient accounts, billings, payment histories, and balances due. This includes financial records relating to patients, but does not include non-financial patient medical records, charts, x-rays or digital images, or other non-financial patient medical files.

5. All invoices, receipts, statements, journals, ledgers, or records relating to the purchase or depreciation of medical equipment, instruments, materials or supplies, and expenses for services.

6. Financial and business records related to Jeffery Paper; Jeffery Paper, DDS; or other businesses related to Jeffrey Paper. Records to be sought include, but are not limited to bank or financial institution records such as bank and investment account statements, deposit slips, deposited items, withdrawal slips, and cancelled checks; books, records, ledgers, journals, statements, receipts, invoices, billings, financial statements and balance sheets reflecting personal or business income or expenses; records of personal or business loan activity; records of purchase and sale of assets and investments; schedules, log books, or other records showing business and personal use of depreciable assets; records of real estate transactions including

contracts, agreements, and settlement sheets; credit and debit card records; records of personal and living expenses; and Forms 1099 for IRA distributions, pensions and annuities.

7. Records relating to the formation or operation of Jeffery Paper, DDS, or any business entity associated with Jeffery Paper.

8. Appointment books, diaries, calendars, and/or any other documents containing information regarding appointments, as well as any correspondence.

9. Employment records and personnel files, including but not limited to employee lists, names, and addresses; duties of employees and employee applications; Forms W-2, 1099, W-4, employment tax returns, ledgers, payroll journals, payroll records and correspondence with employees.

10. IRS publications, regulations, and/or copies of IRS forms and documents; extracts from the Internal Revenue Code; and any correspondence relating to IRS forms, Internal Revenue Statutes or regulations and tax schedules. Documents or materials related to training in tax law and/or the preparation of tax returns, including but not limited to, training manuals, examples, templates, and correspondence in electronic, video, and paper formats.

11. Safe deposit box records and/or keys, as well as storage facility records and/or keys.

The above paragraphs 1 through 11 include all of the foregoing items of evidence in whatever form and by whatever means such materials, their drafts, or their modifications may have been created or stored, including but not limited to any handmade form (such as writing); any photocopies; any mechanical form (such as printing, or typing); any electrical, electronic, or magnetic form or data (such as any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, CD-ROMs, or printer buffers, as well as printouts or readouts from any magnetic storage device).

12. Electronic devices which are capable of storing, analyzing, creating, displaying, converting or transmitting electronic or magnetic computer impulses or data that is contained in this warrant. These devices include:

- Computers, computer components, computer peripherals, modems, monitors, printers, plotters, copiers, fax machines, optical scanners, external hard drives, and other computer related electronic devices;

- Instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components. The items to be seized include operating systems, application software, utility programs, and other programs of software used to communicate with computer hardware or peripherals;

- Information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes floppy disks, diskettes, fixed hard disks, removable hard disk cartridges, flash "thumb" drives and similar devices, tapes, video cassettes, and any other media which is capable of storing magnetic coding.;

- Cellular telephones, PDAs, and other smart phones and their storage cards;

- Passwords, encryption keys, and other access devices that may be necessary to access the above devices or media; and,

Written or printed material which provides instructions or examples concerning the operation of any of the above devices, media, or software.

## Attachment B

## Description of dental office of Jeffrey Paper, DDS,

## Located at 9344 Lanham Severn Road, Suite 112, Lanham Seabrook, MD 20706

The dental office of Jeffrey Paper, DDS is located in a two story red brick office building having an outside entrance to the office. There is large letter signage on the building wall facing Lanham Severn Road reflecting, "DR. JEFF PAPER COSMETIC & FAMILY DENTISTRY". Underneath these letters on the ground floor and to the left is Suite 112. Letters on the glass outdoor entrance to Suite 112 reflect, "DR. JEFF PAPER FAMILY DENTISTRY", as well as, "SUITE 112" above the door. This door of the dental office is normally unlocked during business hours. Entry to Suite 112 is by way of this glass door entrance. There is an inside door for Suite 112, which has a sign reflecting "Private Entrance" and a handwritten sign referring visitors to use the outdoor entrance.

8284725.1